**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT FRIEDLAND, | : |
| Plaintiff, | : Civ. No. 12-6010 (RBK) (AMD) |
| v. | : |
| DONNA ZICKEFOOSE, et al., | : **OPINION** |
| Defendants. | : |

**ROBERT B. KUGLER, U.S.D.J.**

Before the Court is Defendant's motion to dismiss the Amended Complaint ("Complaint") pursuant to Rule 12(b)(6), or for summary judgment pursuant to Rule 56. (ECF No. 129). Plaintiff filed an Opposition, (ECF No. 132), and Defendants filed a Reply. (ECF No. 133). Thereafter, the Court terminated this matter pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), to provide the parties with additional notice and an opportunity to respond before deciding factual disputes, such as exhaustion, on summary judgment. (ECF No. 134). The parties filed submissions in response to the *Paladino* notice. (ECF Nos. 135, 136, 137). Additionally, Plaintiff filed a request for sanctions. (ECF No. 128).

For the following reasons, the Court will grant in part Defendants' motion for summary judgment, dismiss the remainder of the Complaint without prejudice, and deny Plaintiff's request for sanctions.

### I. BACKGROUND

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in an earlier Opinion, (ECF No. 23), the Court will only set forth the background necessary to address the instant motion.

This case arises from events that occurred while Plaintiff was incarcerated at FCI Fort Dix. After a jury trial, the United States District Court for the Southern District of New York sentenced Plaintiff to thirty months in prison for forging the signature of the Honorable Joseph H. Rodriguez, U.S.D.J., and related charges. (*United States v. Friedland*, Crim No. 10-827 (S.D.N.Y.), ECF No. 25).

Plaintiff began serving his sentence at Fort Dix in June of 2012. During his stay, Plaintiff reported that he was suffering from numerous ailments, such as: rheumatoid arthritis; hypercalcemia; Pineal gland tumor; hypertension; Beurger Disease; Raynaud's disease; enlarged prostate; nerve problems, stomach problems, hernia issues, kidney disease, and a pituitary gland lesion.

### A. First Grievance and Court Hearing

Defendants contend that Plaintiff received substantial medical treatment for these issues, but in September of 2012, Plaintiff filed his first administrative grievance, alleging that he has not received treatment for any of his ailments. The warden denied his grievance, finding that multiple measures had been taken to address Plaintiff's medical issues. Plaintiff appealed to the Regional Office and to the General Counsel of the Federal Bureau of Prisons ("BOP") and received a denial at each level.

On September 26, 2012, while still in the administrative grievance process, Plaintiff filed the initial complaint in this matter. Because of the nature of Plaintiff's allegations regarding necessary treatment, the Court ordered Defendants to respond on an expedited basis and the Court held a hearing on March 1, 2013. (ECF No. 37).

At the hearing, the Court concluded that Plaintiff had violated the three strikes provision of the Prison Litigation Reform Act ("PLRA") and required him to pay the filing fee or the Court

would dismiss the case. Additionally, the Court found that the Complaint failed to state a claim and that Plaintiff had failed to exhaust his administrative remedies. After the hearing, the Court denied Plaintiff's motions for a temporary restraining order and injunctive relief, and other miscellaneous motions.

Of note, with regard to Plaintiff's hernia issues, he testified that he only wanted to renew pain medication and to get a hernia belt, and that he did not want surgery. (ECF No. 98, at 75:22 to 76:1) ("All I wanted was [to] renew the pain medication. Give it to me. Give me the hernia belt so I can let it ride out until August, and then I'll have it done myself. I don't need them to do it. It will last until August if they give me the belt to hold it in.")). Indeed, Plaintiff did not specifically mention hernia surgery anywhere in his first grievance or appeals thereof. (ECF No. 129-4).

After the hearing, the Court intended to dismiss the complaint without prejudice, but prior to that dismissal, Plaintiff filed an interlocutory appeal of the denial of his motions. Ultimately, in September of 2013, the Third Circuit denied Plaintiff's appeal and affirmed the denials of his various motions.

### B. Second Grievance

Thereafter, Plaintiff filed a second administrative grievance on November 6, 2013, and made generally the same allegations, requesting "medication for all of the ailments, to have the required surgeries done and medical treatment to stop the undue pain and suffering." (ECF No. 129-3, at 13). As to his hernia issues, Plaintiff stated that he was not requesting hernia surgery at that time: he "had seen a general surgeon who stated that surgery needed to be done to fix the hernia" but the surgery "couldn't be done until such time as the brain lesion was taken care of as it was dangerous to administer anesthesia." (*Id*.). As will be relevant later in this Opinion, Plaintiff

3

did not mention any issues with regard to his kitchen work assignment or third-floor housing placement, in either his first or second grievance.

The warden denied Plaintiff's second grievance, and Plaintiff appealed to the Regional Director. In this appeal, Plaintiff again emphasized that the hernia surgery "could not be done because of the lesion." (ECF No. 129-3, at 17). Instead, Plaintiff sought pain medication for the hernia, but alleged that staff had not provided him with any.

In February of 2014, Plaintiff appealed to BOP General Counsel, and received another denial. In that appeal, Plaintiff requested pain medication, but again emphasized that surgery was not an appropriate option. (*Id*. at 21 ("I also have *no* medication for the hernia and was never given or prescribed any. You state that the URC Committee approval is pending for surgery. How is this being done since there is *no* clearance by any neurologist that this [surgery] can be done." (emphasis in original))).

### C. Instant Complaint

Throughout that time period, Plaintiff also filed a barrage of motions. The Court denied most of those motions, but granted a few motions to amend, resulting in the January 25, 2016, Amended Complaint, the operative Complaint in this matter. (ECF No. 78).

In that Complaint, Plaintiff names Charles Samuels, Donna Zickefoose, Jordan Hollingsworth, and Travis Haczynski, as Defendants in this matter. Plaintiff alleges that Defendants violated his Eighth Amendment rights by: (1) assigning him to work in the kitchen; (2) housing him on the third floor; and (3) denying his requests for hernia surgery. Plaintiff also broadly claims, without any specificity, that Defendants denied him other medical treatment.

As to Plaintiff's kitchen assignment claim, Plaintiff contends that Defendant Hollingsworth violated his rights by assigning him to work in the kitchen. Plaintiff contends that he received

4

gloves which were inadequate to protect him from hot and greasy food, resulting in burning and "permanent nerve damage . . . along with other illnesses that cannot be cured." (ECF No. 78, at 5). Plaintiff also claims that the weight of the things he had to carry in the kitchen exacerbated his hernia issue. Additionally, Plaintiff contends that Defendant Haczynski cleared Plaintiff to work in the kitchen despite knowing that it was not medically safe for Plaintiff.

Next, Plaintiff claims that Defendants Haczynski and Hollingsworth "allowed" staff to place him on the third-floor housing unit, even though Plaintiff "could not walk steps" and suffered from weakness and blackouts. (*Id*. at 5–6). Finally, Plaintiff complains that Defendant Haczynski "knew of the medical emergencies regarding the hernia and refused" to set up his hernia surgery, which worsened his hernia issues. (*Id*. at 5).

Defendants now move to dismiss under Rule 12(b)(6), or in the alternative, for summary judgment, under Rule 56. First, Defendants argue that summary judgment is appropriate because Plaintiff has failed to exhaust his administrative remedies and therefore, the PLRA bars his claims. Alternatively, Defendants contend that the Complaint fails to state claim.

**D. Request for Sanctions**

Additionally, Plaintiff has filed a request for sanctions. (ECF No. 128). He contends that former defense counsel, David Bober, Esq., made false statements to the Court when he alleged that Plaintiff had not paid filing fee and moved to dismiss the case. (ECF No. 110). The Court granted Mr. Bober's request and dismissed this case, and Plaintiff filed an appeal. (ECF No. 111).

Plaintiff, however, had eventually paid the filing fee through deductions on his inmate account, but at some point, during the pendency of this case, the Clerk's Office changed its policy and no longer posted finance payments to the docket. As a result, the Third Circuit vacated the

5

dismissal, and upon receiving the Third Circuit's mandate, this Court reopened the case for further proceedings. (ECF Nos. 121, 126).

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

### B. Motions for Summary Judgment Under Rule 56

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6

Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

### III. DISCUSSION

#### A. Exhaustion

Defendants contend that summary judgment is appropriate because Plaintiff has failed to exhaust his administrative remedies as to his more specific claims. The PLRA, codified as 42 U.S.C. § 1997e, precludes prisoners from contesting prison conditions in federal court until

7

exhausting "all avenues of relief available to them within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the requested relief. *Porter*, 534 U.S. at 524. The prisoner must "carry the grievance through any available appeals process" in order to successfully exhaust his claim. *Camino v. Scott*, No. 05–4201, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citing *Spruill*, 372 F.3d at 232).

These requirements serve three important functions: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996).

Failure to exhaust is an affirmative defense, and as such, defendants have the burden to plead and prove that a plaintiff has failed to exhaust. *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). To determine whether a prisoner has exhausted his administrative remedies, the Court

looks to the agency's applicable grievance procedures and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

The BOP Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq.*, provides for review of inmate grievances at the institutional, Regional, and Central Office levels. Inmates must first present grievances informally, and then if dissatisfied with the informal resolution, the inmate must submit a written administrative remedy request. 28 C.F.R. §§ 542.13–542.14. If the inmate is not satisfied with the warden's response, he may appeal to the Regional Director, and then to the Central Office, General Counsel. 28 C.F.R. § 542.15(a). An appeal to the General Counsel is the final administrative appeal. *Id.* The General Counsel shall respond to the final appeal within 40 calendar days, and if the inmate receives no response within that time, he may consider it a denial. 28 C.F.R. § 542.18.

The Third Circuit has not addressed the issue of the required level of specificity in a grievance but has noted that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007). This language has led this and at least one other Court in this District to find "that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Turner v. Doe*, No. 15-5942, 2016 WL 7341708, at *3 (D.N.J. Dec. 19, 2016) (quoting *Olivares v. United States*, No. 07–3476, 2010 WL 5251429, at *4 (D.N.J. Dec. 16, 2010)), *aff'd sub nom. Turner v. Scott*, 781 F. App'x 47 (3d Cir. 2019).

With those principles in mind, the Court finds that Plaintiff has failed to exhaust the majority of his claims. Plaintiff makes no mention of his kitchen assignment or housing placement claims anywhere in his first or second grievance and related appeals. Indeed, Plaintiff mentioned these claims for the first time in one of his motions to amend, in July of 2015, well after he completed his second grievance. (*See* ECF No. 74).

9

As to Plaintiff's hernia surgery claim, he mentioned his hernia issues in his first grievance but did not request surgery. Rather, Plaintiff sought pain medication for his hernia and sought surgery for his brain lesion. (ECF No. 129-4). Indeed, at the Court's March 1, 2013, hearing, Plaintiff testified that he only wanted to renew pain medication and to receive a hernia belt, but not surgery. (ECF No. 98, at 75:22–23 ("All I wanted was [to] renew the pain medication. Give it to me. Give me the hernia belt so I can let it ride out until August, and then I'll have it done myself. I don't need them to do it. It will last until August if they give me the belt to hold it in.")).

In his second grievance, Plaintiff did request "to have the required surgeries done," but apparently, these did not include hernia surgery. (ECF No. 129-3, at 12–15). Plaintiff stated that he was not requesting hernia surgery at that time because he "had seen a general surgeon who stated that surgery needed to be done to fix the hernia" but the surgery "couldn't be done until such time as the brain lesion was taken care of as it was dangerous to administer anesthesia." (*Id.*). In his appeals of the second grievance, Plaintiff emphasized that the hernia surgery "could not be done because of the lesion." (ECF No. 129-3, at17).

Consequently, although Plaintiff's grievances may have been sufficient to alert the prison of other wrongs, they did not alert the prison to the nature of any immediate need for hernia surgery. *See Turner*, 2016 WL 7341708, at *3. Stated differently, although the second grievance and set of appeals told staff that Plaintiff wanted hernia surgery *in the future*, he was not asking for hernia surgery at that time. As a result, he did not give Defendants the opportunity to redress that alleged wrong, and has thus, failed to exhaust his hernia surgery claim.

Taken together, the Court finds that Plaintiff has failed to exhaust his kitchen assignment, housing placement, and hernia surgery claims, and the Court will grant Defendant's motion for summary judgment as to those claims.

### B. Remaining Claims

The remainder of Plaintiff's claims complain of denials and delays in his medical care, as to his other maladies, which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197.

Courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

As a general rule, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507,

515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

That said, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. Under the first approach, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690. A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id*. at 691.

A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory" (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, assuming *arguendo* that there were violations of the Eighth Amendment, the Complaint fails to describe how Defendants factually violated Plaintiff's constitutional rights—at least, as to the remaining claims.[1] The Complaint appears to name most, if not all of these Defendants, in their supervisory capacity, but states only bare conclusions as to the remaining claims.

Plaintiff fails to allege, for example, that these Defendants created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivations. Nor does Plaintiff allege facts to support the personal involvement of these Defendants, reciting only bare conclusions that they violated Plaintiff's constitutional rights by "allowing" subordinates to deny medical treatment. Plaintiff even acknowledges that he bases his theory of liability against Defendant Samuels on *respondeat superior*. (ECF No. 78, at 6 ("He was given ultimate custody of the plaintiff, thus being the one responsible for all the actions even if they are performed through respondent [sic] superior by his staff.")). Once again, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.

That said, apart from the three unexhausted claims discussed in the previous section, the Complaint offers only bare conclusions as to the actions of Defendants' subordinates. The Complaint alleges that some number of subordinates denied treatment, but does not specify *who* these subordinates are, *when* these denials occurred, *what* treatments are at issue, or *how* they denied treatment as to *which* of Plaintiff's many medical conditions.

Accordingly, the Court will disregard the Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported

---

[1] As discussed above, Plaintiff identified his kitchen assignment, housing placement, and hernia surgery claims with specificity, but failed to exhaust those claims.

13

merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss the remainder of the Complaint, without prejudice, for failure to state a claim.

### C. Sanctions Request

Finally, Plaintiff moves for unspecified sanctions against former defense counsel, David Bober, Esq. (ECF No. 128). He contends that Mr. Bober made false statements to the Court when he alleged that Plaintiff had failed to pay the filing fee and successfully moved to dismiss this case. (ECF No. 110).

Plaintiff does not specify which Rule he seeks sanctions under, referring only to 18 U.S.C. § 1001, which provides *criminal* penalties for making false statements to a court. Plaintiff cannot, however, "bring criminal charges in this Court; that power lies solely with the executive branch." *E.g.*, *Telfair v. Post*, No. 18-3842, 2018 WL 3054679, at *12 (D.N.J. June 20, 2018); *see also Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *11 (D.N.J. July 29, 2019).

Courts "have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties," finding that such plaintiffs lack standing or that such relief is simply unavailable in a civil suit. *E.g.*, *Gittens*, 2019 WL 3417091, at *11 (citation omitted). Accordingly, to the extent that Plaintiff seeks criminal "sanctions" under 18 U.S.C. § 1001, the Court will deny that request.

To the extent Plaintiff seeks civil sanctions under Federal Rule of Civil Procedure 11, such sanctions "are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Didonato v. Imagine One Tech. & Mgmt., Ltd*, No. 15-8377, 2016 WL 6584911, at *7 (D.N.J. Nov. 7, 2016) (quoting *Goldenberg v. Indel, Inc.*, No. 09–5203, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011)); *see also Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Indeed, a Court should only impose sanctions in

those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[ ] of the legal system." *Didonato*, 2016 WL 6584911, at *7 (citing *Doering*, 857 F.2d at 194).

Further, before addressing the merits of a party's Rule 11 motion, the Court must determine whether the party complied with the "safe harbor" provision of Rule 11(c)(2). Under that provision, a party cannot file a motion for sanctions until it first presents the motion to the offending party and allows twenty-one days for the other party to withdraw or correct the challenged issue. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008) (citing Fed. R. Civ. P. 11(c)(2)); *Didonato*, 2016 WL 6584911, at *7

Here, there is nothing in the record to indicate that Plaintiff complied with Rule 11(c)(2), such that Rule 11 sanctions would be appropriate. *See Ortiz v. Auto. Rentals, Inc.*, No. 09–3002, 2010 WL 3168656, at *2 (D.N.J. Aug. 10, 2010). Plaintiff could have, but did not, present a Rule 11 motion to Mr. Bober in November of 2017, or in the following months. In that writing, Plaintiff could have demanded that Mr. Bober withdraw his request to dismiss or demanded that he move to vacate the Court's dismissal Order. (ECF Nos. 110, 111).

That said, assuming *arguendo* that Plaintiff had followed all the proper procedures for a Rule 11 motion, the Court would still deny that motion. Mr. Bober's statements regarding the filing fee do not strike the Court as warranting sanctions. Mr. Bober alleged that "there is no indication on the docket that Friedland ever paid the filing fee as required," which was a true statement. (ECF No. 110, at 2).

At some point during the pendency of this case, however, the Clerk's Office changed its policy and no longer posted finance payments to the docket. Nor is there any evidence that Mr. Bober intentionally misled this Court. Moreover, since this Court accepted Mr. Bober's filing fee argument, this Court implicitly determined that Mr. Bober's filing was not "patently unmeritorious

or frivolous." *Didonato*, 2016 WL 6584911, at *7 (quoting *Goldenberg*, 2011 WL 1134454, at *2). Accordingly, the Court will deny Plaintiff's request for sanctions.

## IV.  CONCLUSION

For the foregoing reasons, Court will grant in part Defendants' motion for summary judgment, dismiss the remainder of the Complaint without prejudice, and deny Plaintiff's request for sanctions. An appropriate Order follows.


DATED:  July 16 , 2020                                              s/Robert B. Kugler
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge